## Andrew T. Hall *versus* Job Jackson *et al.*, Principals, and William F. Homer, Trustee.

A manufacturer in the interior of England made an arrangement with a merchant in
Liverpool, by which the merchant was to receive goods from the manufacturer and
ship them to customers of the manufacturer in the United States, and pay the
shipping charges and make advances to the manufacturer on the goods shipped,
and for the better security of the merchant the manufacturer made his irrevocable
power of attorney to the merchant's agent in the United States, giving him full
authority to collect all debts due to the manufacturer from his customers, and by a
letter of instructions directed the agent to remit all sums collected to the merchant
in Liverpool, to be by him credited to the manufacturer, moneys collected to be re-
mitted at the risk of the merchant, but drafts taken in payment of debts to be re-
mitted at the risk of the manufacturer.　The manufacturer having received an
order from a customer in Massachusetts, sent divers packages to the merchant,
and he shipped them to the customer, who received them and accepted a part of
them, for which he thereby became indebted, but refused to accept the other.　The
debt and the unaccepted packages were attached in the hands of the customer, by
virtue of a trustee process, by a creditor of the manufacturer.　It was *held*, that
the merchant in Liverpool had no lien for his advances and expenses, on the goods
received by the customer nor on the debt due from him, and that the arrangement
above described did not amount to an assignment of the goods, or their proceeds,
by the manufacturer to the merchant, and therefore that the attachment under the
trustee process was valid.

SHAW C. J. delivered the opinion of the Court. The only question in this case is, whether Homer, the trustee, is liable to be charged for the amount, admitted to be due and owing from him to the principal defendants.

The plaintiff is a merchant of this city ; the defendants, Job and John Jackson, are English subjects resident at the town of Burslem, and engaged in the manufacture and sale of crockery ware.

It appears by the answer of the trustee, who is a merchant of Boston, that in the autumn of 1834 he gave one of the firm of J. and J. Jackson, who was then in this country, an order for 40 packages of crockery, to be shipped the ensuing winter ; that the goods were shipped accordingly ; and that he was to have them on a credit of six months, to be computed from the time of their arrival. He further states, that the 40 packages were duly received, that he claimed the right to reject three packages, as not being merchantable, that he was indebted to the Jacksons for the residue, amounting to $743, and that up to the time of the service of the plaintiff's writ, he had no notice that any other person than the Jacksons, had or claimed any right to the proceeds of these goods.

Upon this evidence standing alone, the trustee would undoubtedly be chargeable. The facts show a direct contract for the sale of goods, by the principal defendants to the trustee, a delivery and acceptance pursuant to that contract, and a consequent debt due by the trustee to them.

In order therefore to obtain his discharge, it is for the trustee to show that some other person is entitled to demand and receive this debt. We will not now stop to raise any question in regard to the evidence before the Court, but will consider the facts as they appear by the trustee's answer, and the documents which he has adopted and made part of his answer.

From these it appears, that the Messrs. Jackson, residing in an interior town in England, were under the necessity of sending the goods, which they had occasion to forward to heir customers in this country, to Liverpool, that being the port at which they were to be shipped. For this purpose, they were accustomed to transmit their packages of goods to William

Hall
*v.*
Jackson
and Tr

and James Brown & Co., of Liverpool, to be shipped and forwarded. It seems that in 1832 an arrangement was made by the Jacksons, by which they were to forward the packages of goods, sent in pursuance of the orders of their customers in the United States, to Messrs. Brown & Co. at Liverpool ; that the latter paid the shipping charges, and shipped them ; that by a mutual agreement, when goods had been thus shipped, Messrs. Brown & Co. were accustomed to accept drafts of J. and J. Jackson, in the proportion of about three fourths or four fifths of the amount of the invoices, with an agreement to allow them two and a half per cent. commission for such advances, to return one and a half if the Browns were furnished with funds to meet their acceptances as they should become due. For the better security of Messrs. Brown & Co., the Jacksons made their irrevocable power of attorney to a house in New York, another in Philadelphia, and another in Baltimore, giving them full authority to collect all debts due from their creditors in this country, with various stipulations ; accompanied with a letter of instructions to these attorneys, to remit all moneys, thus received for the Jacksons, to Messrs. Brown & Co., to be by them credited to the Jacksons. If these attorneys received money in this country, it was to go to the credit of the Jacksons with Messrs. Brown & Co., without risk of the remittance ; but if debts were received in drafts, the drafts were to be sent at the risk of the Jacksons. Such was the substance of the arrangement. When goods were thus forwarded and advances made by W. and J. Brown & Co. at Liverpool, they were accustomed to advise the agents and attorneys in this country of the fact. This I infer was done to enable their agents and attorneys to know what demands they were to collect, from whom and when due.

After the trustee was summoned, he received notice from the attorneys in fact, of Messrs. Brown & Co., Messrs. Curtis, that they claimed the money, and at their request the trustee has submitted the documents referred to, as part of his answer.

The question therefore is, whether the plaintiff under his attachment, or Messrs. Brown & Co., have the better title to take this debt, due from the trustee.

Messrs. Brown & Co. claim this debt upon one of two grounds ·

1. Because they had a lien on the crockery ware, shipped to and received by Homer, and on the proceeds of the same in his hands, in security for their advances, and it appears by their account, that there is a larger amount due to them than the amount of this debt ; or

2. That the transaction in question, was in the nature of an assignment of this debt to them, and that notice of it being given to the debtor, at any time before he has actually paid it over, is seasonable notice, and gives the Browns an equitable title, as upon the assignment of a chose in action.

The Court are of opinion, that this claim cannot be maintained upon either ground.

In order to constitute a lien there must be some possession, custody, control, or disposing power, in the person claiming the lien, or his agent, in and over the subject matter, in which such lien is claimed. This is the fact, in the case of a carrier, a factor, a manufacturer or workman, or warehouse-keeper. In the case of a factor, indeed, the factor sells the goods, and thereby parts with the lien on the goods ; but at the same moment he takes the proceeds, whether the money, or security, which he may take in his own name, and thus as between him and his principal, the lien is immediately transferred to the proceeds. In case of a carrier, the freight is, by the nature of the contract, to be paid before the delivery of the goods, and the carrier retains his custody and control of the goods until the lien is discharged. So a warehouse-keeper for his storage, and the tradesman for his labor. But by the very nature of the duty undertaken by Messrs. Brown & Co., that of receiving the goods in packages from Burslem and forwarding them to America, to be delivered, not to an agent of theirs but to the purchaser of the goods from the Jacksons, they were necessarily to part with the custody of the goods, without retaining or having any power or control over the proceeds. They are to receive the goods sent from Burslem, and see that they are put on ship-board, to be forwarded, not to any agents of theirs, but directly to the customers of the vendors, without notice to them of any claim of Messrs. Brown & Co. It would have been a breach of contract on their part, and a violation of their trust, to sell or even to open or

detain a package of their goods. When this duty of shipping was performed, they had neither the possession nor right of possession of the goods. Having no right to sell or detain, no power in any form to convert the goods into money, if they had no lien on the goods, it cannot be perceived how they acquired any lien on the proceeds until by a new and further act of collection they should come into the hands of themselves or their agents. Even when it has been held that a person having a lien, does not necessarily lose his lien by parting with the possession for a particular purpose, it has been considered that this could only be done by delivering the property with notice of the lien, and of his intent not to part with it. But in this case, and in similar cases, the goods came from the vendors directly to the purchasers, without notice of any claim of lien from the forwarding agent at the port of shipment.

2. Nor is there sufficient legal ground to maintain, that the facts prove an assignment of this debt as a chose in action, by the Jacksons to Messrs. Brown & Co. The transaction took place long before the debt was created. Had it been an assignment of all debts afterwards to become due from all persons in the United States to the Jacksons, it is, to say the least, questionable whether it could be maintained. But it does not amount to that. It is an authority to certain firms in this country, to collect all debts due to them, and when collected to appropriate the proceeds to Messrs. Brown & Co., who would thereupon credit the amount to the Jacksons. This might be a very useful and convenient arrangement for the parties, and without considering it as an assignment, would operate to a great extent as a security to the Browns.

When the goods were sent to them at Liverpool, to be forwarded, they would know the fact that such goods were sent, to whom, to what amount, by what ship, &c. By keeping their agents advised in this country, they would have the means generally, through their ample power of attorney, to collect the amount, which, when collected, would enure to the security of the Browns. But until thus collected, neither Messrs. Brown & Co., nor the agents in this country, had either the custody, possession, or the power or control over

either these goods or the proceeds, so as to give any priority over any other creditor, who should by diligence obtain a legal lien on them. The instrument does not purport to assign or transfer any debt or any interest to Messrs. Brown & Co., or to the attorneys for their use, nor contain any thing to prevent or restrain the Jacksons from collecting the same debts. The most that it proves is, that the attorneys in this country were made the common agents of the two parties, the agents of the Jacksons to collect these dues, and the agents of Messrs. Brown & Co. to apply the same when collected, to their use. Until they were so collected and in the hands of these common agents here, the exclusive right of the Browns did not commence, and neither they nor any one in their behalf had any control or disposing power over such moneys. It was simply a power to collect the debts, and not an assignment or transfer of any interest or property, legal or equitable, in these debts themselves. It was a right to acquire a beneficial interest by collection. One way to test this is, to suppose that J. & J. Jackson had become insolvent or died, and a general settlement of their affairs should become necessary. Would these debts all go to their assignees, or personal representatives, for the benefit of the creditors generally, or to Wm. & J. Brown & Co. ? The event supposed would be a revocation of the power given to the attorneys ; for though it purports to be irrevocable, yet not being coupled with an interest, it is revocable in its nature, and must cease with the lives of the authors. The instrument did not purport to transfer any interest in the debts to the attorneys, or to the Browns ; they were not the trustees of the Browns, and there was no interest with which the power could be coupled to make it irrevocable. *Ex parte Heywood* 2 Rose's Cases in Bankruptcy, 355.

On the subject of lien it should have been added, that as Messrs. Brown & Co. received the goods for the sole purpose of forwarding them in the packages as they received them, and thereby, by the very exercise of the authority vested in them, to part with the custody of the goods, and the disposing power over them, I do not perceive how such a house stands in any better situation in respect to lien, than any

Hall
v.
Jackson and
Tr.

other house of trade, not employed in the business of forward-
ing, which should in like manner agree to make advances, with
a power to a common agent to collect their debts.

The circumstance that Messrs. Brown & Co. shipped the
goods, gave them the means of knowing the fact, and nothing
more. Supposing any other house in Liverpool or London
not engaged in the business of forwarding goods, had under-
taken to make advances on like terms, and the Jacksons had
undertaken to keep them constantly advised from time to time,
of all shipments by them made to their customers in America,
and should so inform them, it could hardly be maintained, that
such house would have a lien on such goods, or the proceeds
of them, in security for their advances, and I do not perceive
how Messrs. Brown & Co. stand upon any better ground,
merely because the goods pass under their inspection, for a
limited and special purpose, the accomplishment of which
necessarily removes them from their custody and control.

As there was neither a lien on this debt, nor any assign-
ment thereof prior to the attachment, the Court are of opinion
that the attachment was valid, that the attaching creditor has a
preferable right to hold both the debt due from the trustee and
the three crates of crockery ware remaining in his hands, and
that the trustee be charged on his answer.

The foregoing case was argued in writing by *Blair*, for the
plaintiff, and *C. P. Curtis* and *B. R. Curtis*, for the trustee.
On the subject of lien the plaintiff's counsel cited *Lickbarrow
v. Mason*, 6 East, 21, 25, note ; 2 Kent's Comm. (3d edit.)
638 ; *Sweet* v. *Pym*, 1 East, 4 ; *Ryberg* v. *Snell*, 2 Wash.
C. C. R. 294, 403 ; 2 Saund. Pl. and Evid. 637 *et seq.* ;
Montague on Lien, 8 ; *Rushforth* v. *Hadfield*, 7 East, 224 ;
*Jarvis* v. *Rogers*, 15 Mass. R. 414 ; *Allen* v. *Megguire*, 15
Mass. R. 490. The counsel for the trustee cited on the
same subject, *Drinkwater* v. *Goodwin*, Cowp. 251 ; *Ham-
monds* v. *Barclay*, 2 East, 227 ; *Houghton* v. *Matthews*, 3
Bos. & Pul. 489 ; *Seymour* v. *Hoadley*, 9 Connect. R. 418 ·
and to the point of assignment, *Gerrish* v. *Sweetser*, 4 Pick.
374 ; *Dix* v. *Cobb*, 4 Mass R. 512 ; *Blake* v. *Williams*, 6
Pick. 304.